CaRuthebs, J.,
delivered tbe opinion of tbe court.
Tbis is a contest for tbe excess of tbe proceeds of a tract of land of 500 acres, sold by decree of court, to satisfy tbe vendor’s lien for tbe purchase money.
Tbe land was purchased by Frierson & Hodge from Gen. Thomas Love, in 1843, for $2,500, and bond for title executed to them jointly. They agreed upon a division, and Hodge paid one-balf of tbe consideration, and Frierson none. Both Hodge & Frierson sold out severally to L. J. Wilkins, the father of complainants, and put him in posssession, where he died, leaving tbe complainants on tbe land.
After the death of Love, his executors, in January, 1849, filed the original bill in this case against Frier-son, Hodge and' Wilkins’s heirs, for the purpose of subjecting the whole tract to the payment of the balance of the consideration, then being about $1700, including interest. Hodge died in Arkansas the next July, and the case revived against his only heir A. J. Hodge.
At October term, 1850, a decree was made, requiring the clerk to report upon the title of Love, and to sell the land. The title was reported good, and the land sold 20th January, 1851, for $4,500; the eastern half, that of Hodge to Taliaferro for $2,500, and the western, that of Frierson, to Smith Parks for $2,000. The said sum of $2,000 was very properly decreed to be first applied to the Love debt, as Frierson had not paid anything, and Hodge the owner of the other half had fully paid his half. So it only required a few hundred of the $2,500 to fully satisfy the claim of *704 Love. For the balance of this the present controversy arises between the heirs of Wilkins, the complainants in the cross bill, and the heir and administrator of Hodge, the defendants in the same.
The facts are, that on the 19th December, 1845, Samuel Hodge sold out his half of the land to L. J. Wilkins, for $800, one half paid down, and the other on a credit, which yet remains unpaid, and this note is in the hands of the administrator of Hodge, who is also a party defendant. In the bond for title of that date, there was a covenant on the part of Hodge, to make Wilkins a good warranty deed on the 7th of the next March. Wilkins never received a deed, or paid the balance of the consideration, but remaiued in possession of the land until his death, and left his widow and children upon it. After his death, his son, W. T. Wilkins, who had administered on his estate, “said he would have nothing more to do with the land, and allowed the possession of the whole tract to be taken by R. P. Raines, the agent and ' attorney for Frierson & Hodge, who, as agent and attorney, kept possession, and rented out the premises until it was sold by a decree in this cause.” The note for $400, due to Hodge, as the balance of the consideration, was presented to the said administrator for payment, who refused to pay it for want of title to the land, and spoke of suing Hodge for the money already paid, and actually ordered a writ against him, which order he afterwards countermanded. John A. Wilkins, (one of the heirs) “paid six dollars rent for a part of the land.” These facts are extracted from the written agreement of record,' and *705 are all which are deemed necessary for the questions made.
His Honor, the chancellor, held that these facts amounted to an abandonment of all title to the land, by which complainants, as heirs of Wilkins, are bound, and ' that the title reverted to the heir of Hodge. This was erroneous.
The administrator of Wilkins had no power over the realty of his intestate — that descended to the heirs, and was beyond his control. It was his duty to pay the balance of the consideration out of the personalty, unless he could defend the estate against it, by showing that the vendor had no title to the land. But in this case there was a good title, with the encumbrance of Love’s lien for the remainder of the original purchase money, which as it turns out, was only a few hundred dollars,- after the application of the Frierson half of the tract. . It certainly can make no difference in the principle, that the title of the intestate was equitable im-stead nf legal, or by bond for title, instead of a deed of conveyance. Whatever the title or interest was, it passed to the heirs and not the administrator. His act-ings and doings then, in relation to it, were inoperar tive -as to them. It was his duty to pay off the note for $400, that was still outstanding, and thus dis-incumber the inheritance, unless he could show, that’ the consideration had failed for want of title in Hodge,, in which case he should have resisted it in the protection of the estate. But he could not arbitrarily and by an usurpation of power deprive the heirs of their inheritance by the abandonment of their lights, under the law. The fact, that he was also an heir, can make *706 no difference. He acted in Ms character of personal representative, and not as heir. Others as well as himself, both infants and femes covert were interested in the question, and although he was invested with the power to act for and bind them, in relation to the personalty, the law had given him no such power in regard to the realty.
To what would the principle here contended for, lead? An administrator might change the whole character of the estate, where it consisted of land, in any case where a small portion of the purchase money remained due, by refusing to pay it and giving up the possession. He said here he would not pay the note— he would have no more to do with it, and gave up ■the possession to the agent of the vendor, and the argument is, that these facts amount to a recision or .abandonment of the title under the bond, divests the heirs of the land, and revives the title of the vendor. To sustain this strong position, the case of Smith’s heirs vs. Christmas, 7 Yerg., 565, is cited. That was a very different case in its facts and its principles, and it certainly goes to the verge of the law. In that case Christmas contracted, in writing, to sell and deliver possession,- with a deed of conveyance, on the 1st of January, 1833, and at the same time Smith was to execute his notes for the consideration “with Lemuel -Smith security.” Christmas returned home to Mississippi, where the land lay, and becoming dissatisfied with the trade in two weeks after it was made, wrote to Smith requesting a recision; but Smith died 10th of October, 1832, and did not receive the letter. After his death, and frequently, applications were made to the *707 administrator, one of wbom was the widow, for a recision by consent. They declined doing any thing in the matter, considering they had no power oyer it. But nothing was done on the 1st of January, 1833, by either party, towards the execution of the contract, and Christmas went on to make large and expensive improvements on the land, upon the supposition that the contract was abandoned, and had surrendered another tract of land he had purchased, upon condition that this contract should be executed. In the fall of 1833, the land greatly advanced, being then worth from ten to fifteen thousand dollars more than Smith was to pay. On the 17th September, 1833, the administrators of Smith made notes with Lemuel Smith and Thomas Perkins, sureties for the amount, and upon the time fixed in the contract, and tendered them to Christmas, and demanded possession of the land, which being refused, a bill was filed by the infant heirs of Smith for a specific performance.
The court said in that case, that although the administrators had no authority to rescind the contract, yet it was their duty to execute it at the proper time, that being under the circumstances the essence of the contract, and the failure resulting in great injury to the other party, a specific performance would not be enforced, notwithstanding the infancy and innocence of the complainants. It was an unexecuted contract, and could not be enforced in favor of the party who had failed to comply with it, which in that case produced great injury to the other party.
In the case under consideration, no such circumstances exist to render a specific performance inequita *708 ble and unjust. The failure to pay the last note was not improper, because the other party was not in a condition to convey an unencumbered title, and never were able to do so, until the sale was made under the decree in favor of Love. By this sale, the title was cleared to the land now in controversy, except to the extent of a few hundred dollars, and full and complete equity can be done to all the parties, by paying to Hodge’s adm’r the amount due, and to the heirs of Wilkins, the remainder. Their ancestor was in no fault for not paying the note for $400 before his death, nor his personal representative since, because Ilodge was not in a condition to make a good title on account of the lien of Love’s heirs. It would be strange equity now to deprive the heirs of Wilkins of the benefit of their title, and that in favor of the vendor, Hodge, when neither they, their fathers, or his ádm’r have been in any fault, but the consummation of the title, and the payment of the balance of the consideration, are entirely attributable to the inability of the vendor to convey an unencumbered title until the time at which this contest arises.
The fact that the land has very much advanced in value, is, of course, the cause of the present controversy; but that can have no effect upon the legal questions' governing the rights of the parties either way under the facts of this case.
We are referred to the case of Shaw and others vs. Wilkins’ adm'r, 8 Humph., 650, to establish the position that the acts' of the administrator in this case, amount to an election to rely upon the damages to be recovered upon the forfeited bond for title, and conse *709 quently makes out a case of abandonment of all claims to the land by which the heirs • are bound, and the land reverts to the vendor. We do not understand that case to maintain any such doctrine.
That was a suit brought by Wilkins in his lifetime, upon a bond for title to the western half of the same tract of land, and upon his death during the pendency of the suit, it was permitted to be revived in the name of his administrator. In this it was insisted there was error, because the right devolved upon his heirs, and not the personal representative. It was admitted that the vendors had no title to the land, and that the consideration had all been paid by the .vendee, and the only question was, whether the damages to be recovered would go to the adm’r or heirs. It was decided for the plaintiffs, and the principle settled that “where an. agreement to convey real estate was broken in the lifetime of the vendee, and the vendor had no title at the time of the execution of the agreement, the personal representative had a right to sue for damages.
That principle is certainly correct, and the case, is now fully approved. But there was an election by the vendor in his lifetime, to go for the breach instead of a specific performance, there was no title to descend to the heirs, as was admitted in the case, and if there had been, the heirs could not have avoided the act of their ancestor in his • abandonment of any claim to the land, and a resort-to his action for the breach of the-contract. He had the right to bind all who might claim under him, and leave his estate as he chose, either in personalty or realty. But the personal representative has no such power. He must take the estate *710 as he finds it, and has no power to change its character, so 'as to affect the interest of heirs. The rights of the heirs are fixed by law at the death, and are beyond his reach. His acts of abandonment and recision are as much nullities as to them, as if he had been a stranger, for such he is, as to the realty.
The equitable title then to the land in question, descended to the complainants on the death of their father, incumbered only with the balance of the consideration due to Hodge, so far as that may not be necessary to discharge the prior lien of Love’s heirs upon this half of the land.
An account will be taken to ascertain the amount of the Love debt falling upon this half of the land, which will be deducted from the unpaid purchase money due to Hodge’s estate, with interest, and the balance of this will be paid to Hodge’s adm’r, and the remainder to the heirs of -Wilkins.
The cause will be remanded for such further proceedings as may be necessary to perfect the legal title in favor of the purchasers of the land against the heirs of the Loves, under the supplemental cross bill filed by complainants for that purpose. For this purpose it will be necessary to have an answer, pro confesso, as to two of the adult heirs, upon whom process has been served, and a more perfect answer by the guardian ad litem of the minors.